Virginia Hotman My name is Virginia Hotman, and together with my co-counsel Rob Marino, we are here representing Mr. Sherryar and Mr. Gondal, who are the appellants in this case. In addition to the final order issue that the panel requested we address, we bring two issues to this court warranting reversal of the Bankruptcy Court's decision to deny appellants back pay and back salary from AABCS, the judgment debtor. The Bankruptcy, the first issue is the Bankruptcy Court applied the wrong legal standard to exclude Wait, really the first issue, before you get, we wouldn't get to those issues if there's not a final order. So maybe So I can address that first, yes.  Yes, this order was a final order. The District Court, if you look at the language of the order, which is a JA 833, the District Court specifically affirmed all decisions in the court Sorry, JA what? I'm sorry, 833. Are you sure it's not 831? Well, it could be. I don't have the appendix in front of me. I wrote down 833. I apologize if I'm wrong. Anyway, she affirmed all of the decisions of the United States Bankruptcy Court as set forth in the appeals that were in front of her. I'm sorry, that's the written order? Yes, it's the written order. I'm sorry. But the written order just says for the reasons, do we agree that the written order has no reasoning whatsoever? It has no reasoning whatsoever. It just says look back at what my oral ruling was. But it clearly says Right, but we've repeatedly said that is not enough. Just because the District Court enters an order that purports to resolve all claims against all parties, that is not enough. Let me rephrase. That is certainly not enough under 28 U.S.C. 1291. Yes. We have said that multiple times. Now, the Estate of Cunningham case, which was decided earlier this year that you asked us to address, involved a different situation. It was a District Court acting as a trial judge, and the appellate jurisdiction was 1291. In this case, the Bankruptcy Court acted effectively as the trial court, and the District Court was exercising appellate jurisdiction. So this court's jurisdiction is under 158D. But doesn't that also say final decisions? It does. Which is the same language as 1291. It is. But the Leclerc decision, which was decided about the same time as the Estate of Cunningham decision by this court, reiterates that the strict finality requirements of 1291B do not apply in the same fashion to 158 Bankruptcy cases. Sorry. Sorry, I'll cut you off. Because it does not apply in the same fashion to what cases? In bankruptcy cases? In bankruptcy, yes. But that seems like that's saying that the strict finality rules that apply for our ability to review a District Court under 1291 do not apply to a District Court's ability to review a Bankruptcy Court under 150AD. No one is disagreeing that Judge Brinkema had jurisdiction to consider this appeal. The question is whether we have jurisdiction to consider Judge Brinkema's decision.  But this court's jurisdiction is also based on 158D, which is the same. Sorry. Is the statute that gave Judge Brinkema jurisdiction, does that statute say final decisions? Yes. Final decisions? Yes. But finality is described differently. It is described as finally deciding the discrete issue that's in front. Because bankruptcy cases involve complex decisions that don't all end at the same time. And, in fact, this case was an adversary proceeding, which in and of itself didn't involve bankruptcy issues. It just arose in the context of bankruptcy. Even the Cunningham Court, however, recognized that the District Court need not specifically reiterate or mention each claim against each party in the order. And, instead, it cited some earlier cases that looked at whether or not the language used by the District Court encompassed all claims. And here it's clear that this language that I quoted earlier does encompass all claims. And at the beginning of the hearing, the District Court stated that Judge Brinkema, she had considered all the issues. She was familiar with all the issues. She'd read all the briefs. She'd made her decision. And she only had a few questions to ask counsel. So it wasn't a traditional argument where each issue might be addressed. Okay. So let me put it this way. Could you complete the following sentence? Judge Brinkema rejected the ratification claim because. Yes. I have no idea. Based on her oral ruling, I have no idea why Judge Brinkema rejected the ratification claim. Yes. Okay. I would say the reason she gave for. Sorry. Where did she give a reason? I have the transcript in front of me. Where does Judge Brinkema give a reason for rejecting the ratification claim? Let's see. I believe. I could have the page number wrong. But I believe it's 830 and 831 of the appendix. And that is where she basically said that the district. I'm sorry. The bankruptcy court had reached a fair and equitable resolution of all of the claims. That none of the parties received everything they asked for. That has nothing to do with ratification. It is one of the issues that. Ratification is. That the House raised. I totally agree. It's one of the issues they raised. But the ratification claim isn't whether this is a fair and equitable and you received it. The ratification, I understand, is because you put this on your tax return, you were saying you were okay with it. Well, that was part. Saying fair and equitable does not explain why you put it on your tax return isn't a reason that that party wins. I would agree. But I think it's equally a reason for affirming that decision. As it is for affirming a decision to exclude lay opinion testimony on the value of your own testimony. That Judge Brinkema essentially was saying that there were no clearly erroneous findings of fact made by the bankruptcy judge. And any error such as the error in excluding the salary testimony in her view was not sufficiently material to warrant dismissal or reversal of this case. So you view this. This is the paragraph on page 831 lines 11 through 14 where one way to interpret Judge Brinkema is that she's just summing up her conclusions that she's already given. But you would have us interpret that as saying these are global reasons that cover all of the claims. That's the theory of finality. I would say. And I would say at the beginning she specifically stated that she was familiar with all of the issues in front of the court. And so there isn't any requirement that an appellate court explain each and every reason in order for its order to be final. Gabby, you said earlier that none of the parties received everything that they had asked for. I suspect that indicates a certain desire on your part. Or maybe I'm misinterpreting it. But to lay this case to rest rather than to send it through another round. Well, I think there is the basis to do so here in the ratification issue. I think on the issue of the back salary, I do think that issue, if the bankruptcy court's decision is reversed or vacated, would be. I realize you can take issue with this or with that. But as I understand it, in getting 24.5% of the proceeds of the vehicle sales, and that amounted to, what, $55,000 for each, your clients didn't walk away empty handed. They did not. By a long shot. They did not. $55,000 is just trivial. I know your chief complaint is, well, but we didn't get a proper evaluation of our salary and what we were getting. But you did get a lot. And let's assume that the district court or bankruptcy court really was wrong in saying you need an expert witness to establish that. I'm not sure that you do. But the point is made that the evaluation would still be the evaluation of your work, which would still be in the speculative category, that there was no way to pin it down. And, you know, is that really worth a remand in keeping the meter running when you've received $55,000 and when the bankruptcy court's view or the district court's view is that the value is still going to be speculative? Is there a reasonable chance that anything is going to be different? I think there is. Because I think in this case, Your Honor, I don't believe the bankruptcy court said that any testimony on value would be speculative. Yeah, I'm not so sure why, you know, I'm not so sure why you all didn't settle this thing to begin with. Well, that was what took up most of the argument in front of you. I mean, that's your choice. But, you know, it seemed to me to be a case that cried out for settlement. But that's okay. You know, you decided to come to court with it, and that's, you know, that's your perfect right. But at this late date, what is to be gained by sending it back to a court that already believes, the courts that already believe that this figure you want or this money you want for salaries is of a speculative nature? Again, I don't believe that the bankruptcy court made that finding or discussed speculative nature. His decision seemed to be that unless.  Well, the district court went in a different direction and talked about how she would have, had she been the trial judge, required corroboration like she does in contested Fair Labor Standard Act cases. But in this case, there was no objection. There was no contest regarding the number of hours. And, you know, it may seem more abstract now, but looking back on it, these men worked. Mr. Sherryar testified that he worked up to 90 hours a week, 90 hours a week. And the $55,000 does not anywhere near represent three years worth of back pay that wasn't paid because the company at the time didn't have the money to pay him. So he continued working, and so did Mr. Gondal, on fate, that it would be paid once the company, once COVID cleared and the company began to make money. I certainly understand from your perspective what you're saying. Bankruptcy judge has, bankruptcy law has a certain equitable component, and $55,000 isn't chicken feed. And I know you want more. I know you deserve more. I'm just. I see my time is up, but I would. You've got some rebuttal there. I would like to. Save it for rebuttal. Save it for rebuttal. I'm just, I need to be convinced that this is, it's worthwhile to keep this going and going and going and going and what we're likely to achieve by letting the meter run and proceedings. Well, we could talk about ratification. That would be different. That's for rebuttal. You just tell me why I'm wrong. All right. We'll do it. And wait a minute before you leave. Judge Sackett, do you have anything? No, I do not. I do not. Okay. Thank you. Mr. Forrest. Thank you. May it please the Court, John Forrest for All-American Black Car Service. To answer the jurisdictional question first, I agree substantially with what my colleague has said. There, one distinction I would draw is her comment that the adversary proceeding. So this is the bankruptcy exceptionalism theory. That bankruptcy is just different. That bankruptcy is just different than regular appeals. No. No. Her comment was that the adversary proceeding didn't involve bankruptcy issues. Okay. I just wanted to separate that out. I'll address it later. Sure. Then to get back to the comment, in Cunningham, if I've read it correctly, there were the crane operating defendants who never filed a motion to dismiss. But their claims were wrapped up in the district court dismissal. I distinguish that from the case at hand because, as we've seen from looking at Judge Brinkman's comments, she said that she'd reviewed everything. And I guess this is the Judge Heitens gets back to your comment. She says she's reviewed everything. She made an assessment of it. She made a lot of the same comments that you made, Judge Wilkinson, and just said she said what she said. But I think the fact that she said that she'd reviewed everything, the issues were raised in the pleadings before the district court, satisfies the finality requirement. Ideally, we'd like a little something more particularized and more specific than that general statement. The question that I have to ask is in a situation where neither party has objected to jurisdiction, I realize that doesn't relieve the court of the necessity of finding a final judgment. But where neither party has objected to jurisdiction and where the jurisdictional issue is close, and in my judgment it is close and well worth our time discussing, but even in something as august as jurisdiction, it's possible that in close questions where neither party has objected that you can let a practical consideration work in. And I'm wondering what would be gained by a remand of this issue. And particularly, I want to know what your response is to your opponent's response on the lost salary point. She is saying that the contributions, that the value of the minority shareholder's work and efforts was never fairly appraised and that the idea of requiring an expert was not correct. And then as I understand it, and I'm not sure I perfectly understand it, but I understand that the valuation issue is tied up with bonuses and other kinds of compensation maybe, but that it would be very hard to pin down exactly what the valuation issue was. But what I'd like to hear is simply your response to the fact that, no, we can decide valuation and we haven't been fairly rewarded for the work that we put in. What's your thought about that? Well, I would first separate the treatment of the two gentlemen, Mr. Gondal and Mr. Sherryar. Mr. Sherryar asserted these claims and when I say was rebuffed, the bankruptcy court made the rulings it did, that he needed expert testimony. But Mr. Gondal presented no claim. And, in fact, I think it's in finding of fact number 33, and I'm sorry I don't right now have a joint appendix reference to it, but finding of fact 33, the bankruptcy judge found that Mr. Gondal had no claim. All right, but let's suppose we don't separate them, because if you separate them, that would require further proceedings and some sort of different disposition for each of the minority owners. But what is your response to her point about the fact that this salary, that they put in work for which they were never compensated? Just give me what your response is. Is your response is no, they were compensated? Or is your response that it's all so speculative it is impossible to pin down? Which of those responses is it? Explain. It's actually both. They were. Why is it both? Just explain it to me. It's neither a friendly question or a hostile question. I understand. I think it was Exhibit S or T in the bankruptcy court, which reflected substantial payouts over time. During the course of the bankruptcy case, Mr. Chima was examined with respect to, again, I'm sorry, I don't have the letter Exhibit S and T. It was substantial, I don't want to call it payroll records, some substantial banking records. And they asked Mr. Chima, you know, you got X dollars on X date, what was that for? If this court were to look at that exhibit, you would see that there were substantial payments that were made to Mr. Gondal and Sherryar. They weren't treated as wages. How were they made? In what form were they made? Dividends. In what? They were called by the parties at the time dividends. So the equitable argument, not the equitable argument, the argument would be, if we had to respond to that, was that you receive payment, you receive substantial payments, they just were not at that time denoted as dividends. Okay. You're saying in a closely held corporation where there's several, where the minority owners are actually employees in a sense, that that compensation can come in the form of a dividend as well as a wage? It can. But my broader answer to Your Honor's question is that these gentlemen were not unpaid. They received substantial amounts of money. The money may not have been called salary or may not have been called wage payments at the time, but they received substantial money. Okay. They received substantial money, but that answers the first, that responds to the first question about whether they were compensated. The second question I had, and you said this was also part of it, is that the actual valuation would be very difficult to pin down. Well, it would be difficult to pin down, but I believe that the bankruptcy judge was correct in determining that expert testimony was required to pin down not only the value, but also I believe the bankruptcy judge rejected the contention of just someone, and I don't mean to say be casual here, but someone just saying I work 90 hours a week. I don't think that evidence was sufficient, that the bankruptcy judge viewed that evidence as sufficient as to the number of hours before we get to the question, excuse me, before the bankruptcy judge got to the question of what those hours might be worth. Are you basically content with the way things are? I know you leveled across appeal, but you didn't get everything you wanted. You wanted lost profits, et cetera, et cetera. You didn't get those. You didn't get everything, but are you content with what you did get? Are you happy basically with what the bankruptcy district courts did? No, we are not. We are equally displeased, as equally displeased as opposing counsel is. Well, perhaps maybe it might be a question of degree, but unfortunately not. But everybody got a little something. I mean you won on some points, okay, and you lost on some points, and naturally each of you is displeased with the points that you lost on. But overall, bankruptcy courts have an equitable component. This was a decision that split the baby. You know, it ruled for each side some of the time. Everybody got a little something. Nobody got everything. You know, is it really worth, you know, running the meter and keeping all this stuff going and churning and going? Is that really a wise course for us, or wouldn't the wiser course, even though you'd be disgruntled with the little piece of it you didn't win, you'd say, well, okay. You know, sometimes a compromise you win by not losing everything. And would you be basically okay, you know, let's call it a day? Well, I hope I'm not going to go too far outside the record in answering the question because I think the question does fairly take me outside. There haven't been any settlement discussions. So even after Judge Brinkman said as clearly as she possibly could, you really, really, really need to settle this case? Yes. So you thought the response to that is let's continue to not do the thing that the district court said in the strongest possible terms that you really, really, really should do. Like she started out the hearing. Like literally the most thing that comes clear from Judge Brinkman at the hearing is I don't understand why this case hasn't settled. And even after that, no settlement discussions. To be as direct as I possibly can, Your Honor, we asked for an offer we didn't receive anything.  Multiple times. So we're left with what we have. Oh, the perfect is the enemy of the good. Sometimes it's good to leave well enough alone. I mean, I realize what I'm suggesting isn't ultimately satisfying to anybody, but, you know, sometimes life doesn't work out that way. I understand, Your Honor. I do. All right. Unless there are questions, I'll save my time. Exactly. Judge Hyten, did you have a question? I'm good. Thank you. All right. Let's hear Ms. Hoffman. You've got some rebuttal time. Yes. First I'd like to address the settlement issue. We requested mediation by this court when we initially filed our appeal, and our request was denied. So in the past, any settlement discussions. You didn't have the court's mediators, but you did have two mediators in the bankruptcy and district judges. Right. We also, without a mediator, have had a history. These parties have a history that is not conducive to fruitful settlement discussions. But putting that to one side, I do want to take issue with one thing my fellow counsel here said, and that was that they had been substantially compensated. Before 2020, they did receive as distributions, cash distributions, which effectively was a payment of their salary over and above the small amount that they were paid under W-2, what they called W-2 wages. And Mr. Cheriar testified to a great extent. We were compensated in some form. Before 2020. We have at issue here is three years, 2020 to 2022, those distributions were not made. So they were not compensated for the 90 hours a week. Did you receive dividends? No, not during 2020 to 2022, which is what created the set-off defense that was raised in this particular case. And, Your Honors, I do not think there were no complicated bonus systems. This was a pretty simple, straightforward case where there was testimony of exactly how many hours Mr. Cheriar had worked. And what he was not allowed to testify was what was the hourly value or the hourly worth of his work. And, in effect, the district court applied a per se expert is required rule. And that is essentially the polar opposite of what this court did earlier this year. We are all in a managerial role. And it seems like in a way the company was managed more or less by three different folks. It was two. And they did everything but drive the cars. They did all the office work. Mr. Cheriar worked in the morning shift and the afternoon shift. And Mr. Gondal took care of the cars, made all the repairs, made sure the fleet was still in effect. When you receive the $55,000 and the 24.5% of the vehicle sales proceeds in a way in a closely held corporation where there was a division or there was a shared managerial role, at least somewhat, is it possible that those percentages of the vehicle sales proceeds which were explicitly designed to compensate you for your minority ownership position sort of implicitly included compensation for salary as well? I mean, why not? Because that was a street for Given this closely held situation and given, I mean, normally maybe not, but given the particular structure of this company, it could be that the percentage of the vehicle sales that you received, the $50,000 that you got or some of that was intended for compensation. No, sir. That was a straightforward application of Section 13.1745 of the Virginia Code, which is once the bankruptcy judge denied the back pay claim, there was $280 some odd thousand dollars left over. And under that Virginia statute, because the parties had agreed to dissolve and had conceded dissolution, 745 requires that 50% or 51% goes to the 51% owner and 49% was split equally between the appellants because they each own 24.5%. So that had nothing to do with salary. That was a pure application of that statute. And the salary claim is not only a straightforward application of what the value is worth. It is very similar to the Mountain Valley Pipeline case that this court decided earlier this year, where the court essentially said a lay witness can always testify as to the value of property that they own. And in this case, they were not testifying to anything they lacked firsthand knowledge or personal experience with. The only testimony they were going to give was what each hour they worked for the company and were not paid was worth, and they should have been able to do that under the statute. But in addition, there is the ratification issue, which we do not believe would require a remand. And in that case, the bankruptcy judge conflated ratification with consent. And if you look at his language, he looked to whether or not the parties had consented to this, had benefited from the sale of the vehicles, which they had already consented to. But then he looked to whether or not they actually consented to retain proceeds for salary, when instead he should have looked to whether or not they had, knowing all of the relevant facts, accepted the benefits of treating the salary, the proceeds as repayment of salary. And here there were two benefits. One, it was a discharge of a discharge or a partial discharge of what the company owed in back compensation. It's the same benefit they received by paying third-party debtors. And the second is the tax benefit, because instead of treating it as a capital loss, which is what it would have been had they treated it as the theft or loss of the sale of those capital assets of the company, they treated it as a distribution in salary, which was the same way, as my fellow counsel observed, it was the same way they had paid salary out before 2020. And there's testimony in the record about that. It seems pretty clear under the ratification cases that this court could make that decision. I see my time is up. All right, thank you very much. And then, Mr. Forrest, do you have some further time? Yes. Your Honor, to address the application of the statute, I think it was 13.1754. We don't think that the bankruptcy judge was applying that statute. But even if he was, it was incorrect to do so for the following reasons. Number one, the All-American Black Car Service had a plan approved, confirmed, excuse me. Article 10 of that plan provided that the confirmation order was a satisfaction of any claims regarding the status or the standing of the corporation. Exhibit 12 that was introduced in evidence at the trial was the complaint that Mr. Gondal and Sherry are filed in the Fairfax County Circuit Court asking for, in essence, not in essence, among other things, a dissolution of the corporation. So upon confirmation of that plan, those claims for dissolution were forever barred. Because those claims were barred, it would not have been appropriate for the bankruptcy judge to apply the dissolution statute based upon principles of res judicata and collateral estoppel. The second argument that we have is that when All-American Black Car Service filed the bankruptcy petition under Section 301 of the Bankruptcy Code, that created an estate. The estate is a legal person separate and apart from the corporation. The estate was not a party to that, I just want to call it the dissolution agreement, the informal agreement that was reached by the shareholders. So the estate was not bound by that agreement. Because the estate was not bound by that agreement and because of confirmation of the plan, under principles of res judicata and collateral estoppel, it was not appropriate for the bankruptcy judge to, number one, well, to allow Mrs. Sherry and Gondal to keep that money. The essential question that we've raised in our, when I say question, we're raising our conclusion, in the conclusion of I think our opening brief, we made the observation that as much as we appreciate, we didn't say this in the brief, but I do appreciate Your Honor's comment that what justice looks like in a bankruptcy court, and it's an effort to do something for everyone, but the essential question that we have is how is it that these two shareholders are allowed to keep roughly half the money that they, I'm going to say took, and retain their interest in the corporation. Those two facts should not and cannot coexist together. They are mutually exclusive. And part of the reason we're here on the appeal is as much as we would have, I don't want to say liked it, I don't think the bankruptcy judge could say you guys don't have the stock, you can't adjust that particular right because that's a personal right they have, but the only solution available is for the bankruptcy court to find that the money that was taken, which was property of the bankruptcy estate under Section 541, belonged to the corporation. All right, we thank you. Judge, do you have any further questions? We're fine. We will adjourn court and come down and greet counsel. I want to thank our courtroom deputy for all her wonderful service. Thank you. This honorable court adjourned until this afternoon. God save the United States and this honorable court.
judges: J. Harvie Wilkinson III, Stephanie D. Thacker, Toby J. Heytens